# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

JOHN R. R., JR.[1],       )
                      )
     Plaintiff,      )
                      )
     v.             )     CASE NO. 2:18-CV-487-MGG
                      )
COMMISSIONER OF SOCIAL   )
SECURITY,            )
                      )
     Defendant.    )

## OPINION AND ORDER

Plaintiff, John R. R., Jr., filed his complaint in this Court seeking judicial review

of the Social Security Commissioner's final decision to deny his application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

benefits under Title II and Title XVI of the Social Security Act ("the Act") respectively.

This Court may enter a ruling in this matter based on the parties' consent pursuant to 28

U.S.C. § 636(c)(1) and 42 U.S.C. § 405(g). For the reasons discussed below, this Court

reverses the Commissioner's final decision and remands the decision to the Social

Security Administration for further proceedings consistent with this opinion.

## I.   OVERVIEW OF THE CASE

Plaintiff was 32 years old on January 31, 2015, his alleged disability onset date.

Plaintiff completed ninth grade and worked as a garment sorter, flow team member,

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

stocker, package handler, forklift driver, and material handler. Plaintiff lost his last substantial job as a flow team member at Target on January 31, 2015, when his store closed. In 2015, Plaintiff then attempted to work at several jobs but none of them for any significant length of time. Plaintiff alleges disability based on functional limitations arising from depression, anxiety, and asthma. Plaintiff only challenges the ALJ's consideration of his mental impairments here.

The record shows that Plaintiff struggled to maintain consistent housing for himself and faced bouts of homelessness; was married but then endured a trying divorce, which left him unable to see his children; and was hospitalized for psychiatric care four times—in October 2015, December 2015, February 2016, and November 2016—because of episodes of suicidal ideation as well as impaired focus, low energy, hopelessness, and persistent auditory hallucinations. Plaintiff continued to treat with a psychiatrist, Dr. Prakash Varghese, M.D., during and after his hospitalizations. Under Dr. Varghese's care, Plaintiff's treatment plan included psychotropic medication.

On September 12, 2016, Dr. Varghese opined in a letter to a Township Trustee, from whom Plaintiff was seeking assistance, that Plaintiff could not perform work responsibilities and was permanently disabled. [DE 11 at 899]. Before that, two State Agency psychological consultants opined in January 2016, that Plaintiff's "work report indicated that [he] demonstrated the ability to complete a simple, unskilled work routine that does not require prolonged social contact." [DE 11 at 104, 128–29].

At a hearing on October 16, 2017, Plaintiff testified by video before an administrative law judge ("ALJ") about his work, impairments, and limitations. A

vocational expert ("VE") also testified at the hearing. On January 31, 2018, the ALJ issued a written decision finding him not disabled under the Act. As a result, the ALJ denied Plaintiff's request for DIB and SSI benefits. On October 31, 2018, the Appeals Council denied Plaintiff's timely request for review making the ALJ's January 2018 decision the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009). Now ripe before this Court is Plaintiff's complaint for judicial review of the Commissioner's unfavorable decision under 42 U.S.C. § 405(g).

## II.  DISABILITY STANDARD

In order to qualify for DIB and SSI benefits, a claimant must be "disabled" under Section 223(d) of the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404 to establish disability without further analysis; (4) whether the claimant can perform her past relevant work based upon her residual functional capacity ("RFC"); and (5) whether the claimant is capable

of making an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)[2]; *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). As such, the claimant must prove that he is disabled and submit all evidence relevant to the Commissioner's disability determination. 20 C.F.R. § 416.912(a)(1).

## III. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Court must give deference to the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if

---

[2] DIB regulations are found at 20 C.F.R. § 404, while SSI regulations are found at 20 C.F.R. § 416. They are essentially identical. For efficiency's sake, the Court will only reference the DIB regulations in this Opinion and Order.

it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). An ALJ may not ignore an entire line of evidence contrary to her findings. *Zurawski v. Halter*, 243 F.3d 881, 888 (7th Cir. 2001). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). "Substantial" evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th. Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

#### IV.   ANALYSIS

Here, Plaintiff challenges three aspects of the ALJ's decision. First, Plaintiff contends that the ALJ erred in her decision to discount the weight given to Dr. Varghese's medical opinion. Second, Plaintiff asserts that the ALJ improperly applied the "Special Technique" in determining the severity of his mental impairments. And third, Plaintiff argues that the ALJ erred in finding that his subjective symptom allegations were not entirely consistent with the evidence. Each argument is addressed in turn below.

#### A.   Dr. Varghese's Opinion

A claimant's RFC is the most activity in which he can engage in a work setting despite the physical and mental limitations that arise from his severe and non-severe impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). In crafting an RFC, the ALJ must consider "all of the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1545(a)(3); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

Here, the ALJ determined that Plaintiff retains the RFC to perform "a full range of work at all exertional levels" but limited "to simple, routine and repetitive tasks and simple work-related decisions . . . . and no interaction with the public, but . . . occasional interaction with his coworkers and supervisors." [*Id.*]. In support of her RFC analysis, the ALJ presented a summary of Plaintiff's medical records in chronological order, including parts of Dr. Varghese's treatment notes dated December 2015 through June 2017. The ALJ summarized Dr. Varghese's treatment notes as follows:

That same month[3], [Plaintiff's] case manager was attempting to get him an apartment since he was living in a shelter. He just got back on his medications. Fair grooming, hygiene and eye contact was noted. No psychomotor abnormalities and his speech was normal. The claimant denied suicidal thoughts and thought processes were circumstantial. Judgment and insight were fair. Mood was depressed and affect were constricted.

. . . .

From March 2016 through February 2017, [Plaintiff] reported that he continued to feel depressed and heard voices occasionally. He walked a lot for exercise. Fair grooming, eye contact and hygiene was noted. Normal speech and he denied suicidal thoughts, but reported auditory hallucinations. Thought processes were logical to circumstantial and judgment and insight were fair. Mood was depressed and affect was constricted.

. . . .

[I]n June 2017, he reported that when he was 22 or 23 years of age, he began to experience depression, anxiety, racing thoughts and he heard voices at that time. He was taking his medication and felt "so-so" and occasionally, he is depressed and heard voices. The claimant had difficulty sleeping only sleeping 4-5 hours per night because he had nightmares. He was hospitalized 6 days in October 2014[4] and 2 days in December 2015. He then was hospitalized for 4 days in February 2016 for suicidal thoughts and 12 days in November 2016. . . . He was last seen in April 2017. He denied any suicidal thoughts and worked with his case manager and therapist twice a week. Upon examination, grooming hygiene and eye contact were fair. He was somewhat restless, but his speech was normal. Thought processes were logical and judgment and insight were fair. Affect was constricted.

[DE 11 at 22–23].

The ALJ's next paragraph started with the following two sentences citing Dr.

Varghese's September 2016 letter to the Township Trustee: "[Dr. Varghese] opined that

---

[3] Although the ALJ's reference here is not clear, the Court infers from context in the previous paragraph and the ALJ's discussion of the December 2015 consultative examination discussed immediately preceding this reference that the ALJ means December 2015.

[4] The ALJ misquotes Dr. Varghese's records from Plaintiff's June 22, 2017, office visit, which indicate that Plaintiff "[r]eported 2 psychiatric hospitalizations at St. Margaret Hospital, Dyer: October 13 to 19, 2015; December 12 to 14, 2015." [DE 11 at 815].

the claimant could not work because of his depression with psychosis. He also could not perform work responsibilities; however, [the doctor] failed to state what [Plaintiff] could or could not do in his opinion." [DE 11 at 23]. The ALJ then afforded little weight Dr. Varghese's "opinion" noting several reasons. The ALJ explained that she had discounted Dr. Varghese's "opinion" because Plaintiff worked after his onset date, performed odd jobs, and continued to actively look for employment. [*Id.*]. The ALJ then reiterated that Dr. Varghese had not specified functional limitations in the Trustee letter. Immediately thereafter, in the same paragraph, the ALJ explicated her conclusion regarding Plaintiff's alleged symptoms as follows.

> Many of the claimant's symptoms are caused by major life stressors, as he lost his job because Target closed the store on the onset date, he was going through a separation with his wife causing him not to be able to see his children for over a year, being homeless and not having a car and trying to find a job. He also would regularly stop taking his medication because he would feel better and would only take his medication a few times per week. He admits that he feels better when on his medication, but often stops taking it. His ability to work after the onset date and his condition improving when on medication, as exhibited with his hospitalization that his mental status substantially improves after medication is evidence that if he were complaint with taking his medication his symptoms would improve. In addition, his hospitalization revolved around him being upset about not seeing his children, which would greatly affect anyone.

[*Id.*]. The ALJ's decision included nothing further directly referencing Dr. Varghese's treatment notes or the Trustee letter.

Plaintiff contends that this assessment of Dr. Varghese's opinion by the ALJ is faulty because it does not properly consider the mandatory regulatory factors in discounting Dr. Varghese's treating source opinion and is not supported with sound

reasoning. ALJs are required to consider every medical opinion in a claimant's records. 20 C.F.R. § 404.1527(c). A medical opinion from a treating source is generally given more weight because of the medical professional's longitudinal experience with the claimant's impairments and treatment. *Id.* § 404.1527(c)(2). A treating source opinion is given controlling weight unless the ALJ finds that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is inconsistent with "the other substantial evidence" in the case record. *Id.* Where a treating source opinion is not given controlling weight, the ALJ must consider the examining relationship, treatment relationship, length of relationship and frequency of visits, and nature and extent of the relationship to explain why the opinion is discounted. *Id.* § 404.1527(c); *see also Gerstner v. Berryhill,* 879 F.3d 257, 263 (7th Cir. 2018). Plaintiff contends that the ALJ did not indicate if or how she considered the Section 1527(c) factors in assigning little weight to Dr. Varghese's opinion.

Yet the Commissioner correctly points out that Dr. Varghese's statement to the Township Trustee that Plaintiff was unable to work and was permanently disabled does not constitute a "medical opinion." Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, symptoms, diagnosis and prognosis, RFC, and functional limitations. 20 C.F.R. § 404.1527(a)(1). On other hand, opinions on whether a claimant is disabled or unable to work are not medical opinions even if they are made by treating physicians. *Id.* § 404.1527(d).

The Commissioner makes the final determination as to whether a claimant meets the statutory definition of disability. *Id.* § 404.1527(d)(1). To do so, the ALJ reviews all medical findings and other evidence supporting a medical source statement that a claimant is disabled. *Id.* Therefore, no special significance is given to an opinion by a medical source—even a treating physician—if it merely states that the claimant is "disabled" or "unable to work." *Id.* § 404.1527(d)(3); *cf. Scott v. Sullivan*, 898 F.2d 519, 524 n.4 (7th Cir. 1990) ("The opinion of a doctor that a claimant 'is disabled for purposes of Social Security' need not be accepted if there is contradictory evidence suggesting nonqualification.").

Dr. Varghese's September 2016 statement to the Township Trustee only states, without any explanation or supporting evidence, that Plaintiff is disabled. While Dr. Varghese's statement may have been useful to the Township Trustee in assessing Plaintiff's qualifications for assistance, it does not qualify as a medical opinion no matter what the ALJ may have thought. As such, the ALJ's failure to discuss all of the Section 1527(c) factors as part of her analysis in support of discounting Dr. Varghese's "opinion" is not a sufficient reason - standing alone – to justify remand. However, Plaintiff's argument that the ALJ did not support her analysis of Dr. Varghese's statement with sound reasoning is more persuasive.

As suggested above, Dr. Varghese's statement—on its own—is not and should not have been significant to the ALJ's consideration of whether Plaintiff is disabled under the Act. *See* 20 C.F.R. § 404.1527(d)(3). Indeed, whether a claimant "is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be

answered by a physician." *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013) (citations omitted). However, to answer that question of law, an ALJ must determine the claimant's "physical and mental ability to work full time" and cannot ignore medical evidence relevant to that analysis. *Id.* Therefore, the ALJ was bound to review carefully all medical findings and other evidence supporting Dr. Varghese's conclusion that Plaintiff is disabled. This is where the ALJ failed.

As exemplified above in the ALJ's recitations related to Dr. Varghese's treatment notes and Trustee letter, the ALJ noted considerable evidence from the record in her decision. She cited to parts of Plaintiff's own disability report, the third party function report completed by Plaintiff's aunt, hearing testimony by Plaintiff and the VE, work reports, State Agency examiner and consultant medical and psychological reports, and all of the medical evidence provided by Plaintiff. From this, the Court infers that the ALJ reviewed all the evidence in the record before her. However, the ALJ's recitation of evidence is written poorly at best and included some grammatical choices that limited the effectiveness of her writing. Beyond that, the ALJ provided limited context for the evidence she cited leaving the Court unable to discern, for instance, if the evidence reflected Plaintiff's own allegations or the medical sources' professional observations and conclusions. In failing to contextualize the evidence she cites, the rationale for the ALJ's conclusions about how the evidence does or does not support Dr. Varghese's disability opinion are disconnected from the medical and testimonial evidence she acknowledges.

The ALJ appears to have reasoned, in part, that Plaintiff's desire to work, as evidenced by his unsuccessful attempts to work after his alleged onset date, showed his ability to work. [*See* DE 11 at 23]. Yet "a claimant's desire to work is not evidence that a claimant has embellished his limitations." *Lambert v. Colvin*, 896 F.3d 768, 778 (7th Cir. 2018); *see also Cullinan v. .Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017); *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

The ALJ also observed that Plaintiff stopped taking his psychotropic medication from time to time and used this fact to support rejecting Dr. Varghese's disability opinion. [DE 11 at 23]. Yet the ALJ did not explain how Plaintiff's intermittent noncompliance supported his conclusion that Plaintiff was not disabled. The ALJ may have correctly stated that Plaintiff—like most patients—would probably experience improved symptoms while taking his prescribed medication. However, the ALJ fails to account for another reality for mental health patients—the difficulty they have maintaining consistent use of medications. *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("mental illness . . . may prevent the sufferer from taking [his] prescribed medicines or otherwise submitting to treatment.").

Also concerning is the ALJ's unsupported conclusion that Plaintiff's hospitalization revolved around his distress at not seeing his children. [DE 11 at 23]. While Plaintiff's personal challenges could have contributed to his mental health issues, the ALJ offers no evidentiary support for how this contributing factor, on its own, justifies deemphasizing the full import of Plaintiff's psychiatric hospitalizations to the disability determination suggested in Dr. Varghese's Trustee letter. *See Lopez*, 336 F.3d

at 539. The ALJ also fails to reconcile this dismissive conclusion with her previous statements reporting that Plaintiff was hospitalized "after having suicidal thoughts" [DE 11 at 22] and "because he was suicidal and depressed." [*Id.* at 23].

A significant problem with the ALJ's analysis is that she cites much of the evidence earlier in her decision and fails to connect that evidence to the opinion of Dr. Varghese. Taken as a whole, the ALJ's explicit rationale for significantly discounting Dr. Varghese's opinion does not logically connect the evidence in the record to her ultimate conclusion rejecting Dr. Varghese's opinion. *See O'Connor-Spinner*, 527 F.3d at 618. Without a more effective logical bridge, the ALJ has led the Court to infer that she improperly cherry-picked and ignored evidence contradicting her disability determination. *See Denton*, 596 F.3d at 425; *Zurawski*, 243 F.3d at 888. Accordingly, her decision is not supported by substantial evidence such that remand is warranted.

**B.     Special Technique Related to Mental Impairment**

An ALJ must apply the Special Technique outlined in 20 C.F.R. § 404.1520a when adjudicating a claimant's claim for disability benefits based upon a mental impairment. *Craft*, 539 F.3d at 674. The Special Technique is used at Steps Two and Three of the five-step disability evaluation process to analyze whether the claimant has a medically determinable mental impairment and whether that impairment causes functional limitations that render the claimant conclusively disabled. *Id.* As part of the Special Technique process, the ALJ must rate the degree of functional limitation in four broad areas: (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. 20 C.F.R.

§ 404.1520a(c)(3). Until January 17, 2017, the four broad functional areas were defined in Section 404.1520a(c)(3) as "[a]ctivities of daily living; social functioning; concentration, persistence, or pace: and episodes of decompensation" ("the 'old' functional domains"). The Special Technique is not an assessment of specific, work-related functional limitations defined later in the RFC.

Here, the ALJ did not detail her analysis of the functional domains in the sections of her decision devoted to the Step Two severity and Step Three listing analyses. In her Step Three section, the ALJ merely reported her finding that Plaintiff's "mental impairments cause moderate limitations in understanding, remembering and applying information, moderate limitations in interacting with others, moderate limitations in concentrating, persisting or maintaining pace and mild limitations in adapting or managing oneself." [DE 11 at 18]. For support, the ALJ indicated that "[t]he medical evidence of record and the testimony at the hearing [were] both discussed in greater detail below in Finding 5 [the RFC analysis] and incorporated herein by reference." [*Id.*].

The ALJ ended her RFC analysis with a lengthy paragraph addressing the four functional domains after having recited considerable evidence and discussing Dr. Varghese's disability opinion, as noted above. The ALJ started the paragraph reporting the State Agency psychological consultants' conclusions in 2016 under the "old" functional domains applicable at that time. The State Agency consultants found that Plaintiff was moderately limited in his activities of daily living, social functioning, and in maintaining concentration, persistence, and pace with one or two episodes of decompensation. [DE 11 at 24]. They then opined that Plaintiff "is able to complete

simple, unskilled work routine that does not require prolonged social contact." [*Id.*]. The ALJ explained that she was affording this opinion only some weight because "some of it is inconsistent with the record and not consistent with the new [functional domains]." [*Id.*]. After announcing this conclusion, the ALJ used considerable space to interpret and explain her conclusion in context of the new functional areas. This is the only explanation offered by the ALJ in her entire decision for her Special Technique conclusions relevant to Steps Two and Three.

The ALJ focuses on Plaintiff's work, marital and family separation, improvement when complying with medication prescriptions, and his asserted independence in daily activities to support her finding of moderate limitations in understanding, remembering, and applying information and concentrating, persisting, and maintaining pace. The ALJ then notes Plaintiff's pre-onset work at Target and his pleasant and cooperative demeanor during medical examinations and treatment to support finding no more than moderate limitation in interacting with others. Based on similar non-medical information, the ALJ concluded that Plaintiff is no more than mildly limited in adapting and managing himself.

The ALJ's functional domain analysis is consistent in form and style with her Dr. Varghese analysis above. It lacks contextualization in light of other medical evidence such as Plaintiff's hospitalizations, intractable symptoms despite ongoing treatment, and his ongoing need for assistance from either a case manager or his aunt related to his daily activities. Admittedly, "an ALJ need not provide a complete written evaluation of every piece of testimony and evidence [as long as the Court can] track the ALJ's

reasoning and be assured that the ALJ considered the important evidence . . . ." *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995). But as written, the ALJ's discussion of the functional domains in her Special Technique analysis fails to assure the Court that she considered all the important evidence, much of which she recited earlier in her RFC analysis. Similarly, the ALJ has not explained how the particular evidence she cites in her functional domain analysis established the level of severity of Plaintiff's functionality. *See Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). Internal inconsistencies compromise an ALJ's decision. *Parker v. Astrue*, 597 F.3d 920, 924-25 (7th Cir. 2010). And with no connection to much of the medical evidence the ALJ cites herself, she has left the Court unable to track whether her conclusions are consistent with that evidence.

Moreover, the ALJ appears to have used her analysis of the four functional domains to also support her conclusion that the State Agency consultants' opinions were not consistent with the record. In so doing, the ALJ has raised different questions of internal inconsistencies. The non-exertional limitations the ALJ incorporated into Plaintiff's RFC mirror the State Agency consultants' opinions even though the ALJ discounted the opinions as inconsistent with the record. Additionally, the ALJ's conclusions about Plaintiff's limitations in the four functional domains are mostly parallel to those reached by the State Agency consultants even though the ALJ discounted their opinions.

Given these internal inconsistencies and the lack of connection to the evidence of record, the ALJ's decision lacks a logical bridge to her Special Technique conclusions.

*O'Connor-Spinner*, 627 F.3d at 618; *see also Minnick*, 775 F.3d at 935. Accordingly, the ALJ's decision is not supported by substantial evidence and warrants remand.

### C.     Subjective Symptom Analysis

In disability determinations, ALJs must consider all of a claimant's symptoms, their consistency with all evidence in the record, and their effect on the claimant's ability to work. 20 C.F.R. § 404.1529(a); *see also* SSR 16-3p. In analyzing subjective symptoms, the ALJ evaluates the intensity and persistence of a claimant's alleged symptoms if she first finds that a medically determinable impairment could be reasonably expected to produce the alleged symptoms. *Id.* § 404.1529(b)–(c). An ALJ's subjective symptom analysis determination is treated deferentially and will only be overturned if it is patently wrong or lacks explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)); *see also Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012); *Dixon v. Massanari*, 270 F.3d 1171, 1178–79 (7th Cir. 2001). "A credibility[5] determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Cullinan*, 878 F.3d at 603.

---

[5] The *Cullinan* court used the term "credibility" as quoted above based on language set forth in SSR 96-7p, which was applicable then. 878 F.3d at 603. However, SSR 16-3p has since rescinded and superseded SSR 96-7p. 2017 WL 51880304, at *1 (Oct. 25, 2017). SSR 16-3p updated the SSA's policy on subjective symptom analysis by eliminating use of the term "credibility" and clarifying that "subjective symptom analysis is not an examination of an individual's character." *Id.* at 2; *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). The shift in language did not change the fact that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.'' *Cole*, 831 F.3d at 416 (quoting *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015)). Therefore, the reference to "credibility" here remains applicable to the ALJ's analysis here of Plaintiff's subjective symptoms.

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [DE 11 at 20]. The ALJ then stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [*Id.*]. Plaintiff argues that the ALJ improperly applied an "entirely consistent" standard in assessing Plaintiff's subjective symptoms. Plaintiff contends that the ALJ should have applied a preponderance of the evidence standard.

ALJs must base their decisions overall "on the preponderance of the evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 404.953(a). However, subjective symptom analyses necessarily consider the consistency of a claimant's alleged symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a). Therefore, the ALJ's use of the phrase "not entirely consistent" here does not necessarily establish that the ALJ applied the wrong standard. Yet, Plaintiff is correct that courts have chastised ALJs for using similar boilerplate in subjective symptom analyses. *See, e.g.*, *Wartak v. Berryhill*, Case No. 2:17-cv-205, 2018 WL 4561339, at *9 (N.D. Ind. Sept. 24, 2018); *Minger v. Berryhill*, 307 F. Supp. 3d 865, 872 (N.D. Ill. 2018); *cf. Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). But use of such boilerplate can be harmless if the ALJ discusses the claimant's symptoms and her assessment of them sufficiently in the decision. *Minger*, 307 F. Supp. 3d at 872. It is in the discussion of Plaintiff's subjective symptoms that the ALJ's analysis fails.

As the Commissioner explains, the ALJ retains the responsibility to resolve evidentiary conflicts and ambiguities and to make conclusions about the evidence. However, the ALJ did not adequately articulate her rationale for her conclusion that Plaintiff's alleged symptoms were "not entirely consistent" with all the evidence in the record. The ALJ appears to have concluded that Plaintiff's activities of daily living, employment history, and desire to work outweighed medical and other evidence in the record. But as already shown, the ALJ's decision merely recites considerable evidence then jumps to conclusions without contextualization or any logical bridge from the evidence to her conclusion. A summary of evidence does not substitute for analysis of evidence. *Young v. Sec'y of Health & Human Sevs.*, 957 F.2d 386, 393 (7th Cir. 1992). Without more, the Court cannot trace the ALJ's reasoning for discounting Plaintiff's subjective symptoms raising questions such as whether the ALJ improperly applied a rigorous standard when evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms, *see Wartak*, 2018 WL 4561339, at *9; *Minger*, 307 F. Supp. 3d at 872; conflated Plaintiff's activities of daily living with his ability to work full-time, *see Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); and discounted Plaintiff's symptoms based upon his desire to work, *See Lambert*, 896 F.3d at 778.

Again, the problem is not necessarily with the ALJ's final conclusion, it is with how she presented her analysis in her decision. By merely reciting facts without contextualization and presenting conclusions based on evidence with no logical bridge, the ALJ's subjective symptom analysis relies on inferences for which she does not

articulate sufficient explanation. Therefore, the ALJ's subjective symptom analysis is also not supported by substantial evidence and must be remanded.

### III. CONCLUSION

As discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Court **REMANDS** this case to the Commissioner for further consideration consistent with this opinion.

**SO ORDERED** this 30th day of March 2020.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge